*In re* MARRIAGE OF MARY NELLE DOUGLAS, Petitioner-Appellee, and JERRY A. DOUGLAS, Respondent-Appellant.

Fifth District   No. 5—88—0532

Opinion filed April 10, 1990.

Bruce D. Stewart, of Harrisburg, for appellant.

W.A. Armstrong, of Mitchell & Armstrong, Ltd., of Marion, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:
Jerry Douglas appeals from a judgment of dissolution of marriage

awarding maintenance, child support and attorney fees, and from the denial of his post-trial motion to vacate the judgment of dissolution.

Testimony in the divorce proceedings revealed that the parties were married in 1964. In the early years of their marriage, Mary was employed as a school teacher, while Jerry attended dental school. Mary has not been employed outside the home since 1972, except for substitute teaching, coaching a cheerleading squad, and geneology research, all of which Mary estimated generated a total annual income of approximately $2,800 in 1986, and $2,000 in 1987.

Soon after Jerry graduated from dental school in 1968, he opened an office in Vienna, Illinois, where his practice flourished. At one time he had eight employees working for him, including an associate. Jerry's testimony revealed that his gross income for 1980 was $148,757; in 1981 it was $122,818; in 1982 it was $170,243; and in 1983 it was $155,917. He testified that like most dental practices, the expenses incurred in operating his office ran about 45% to 60% of his gross income. Over the years the parties grew accustomed to a rather high standard of living and were well able to provide for their three daughters. At the time of the entry of the judgment of dissolution they had three minor children, none of whom require any special educational or medical attention.

The parties testified that sometime in 1982 or 1983 they began experiencing financial difficulties. Jerry testified that through no fault of his own his dental office was closed in 1984. Jerry was unable to earn any income from the practice of dentistry in 1984 and for the first nine months of 1985. In 1984 all of the major assets the Douglases' had acquired were taken via foreclosure proceedings. These assets included their home, their farm of approximately 1,200 acres, and their feed and fertilizer business which they operated in Pope County. Two years prior to the parties' separation in November 1985, their standard of living decreased considerably. The evidence demonstrated that the parties' current list of liabilities totals about $1 million.

During the trial the respondent submitted 16 exhibits and petitioner submitted 12 exhibits into evidence. The exhibits included income statements, United States income tax returns, a list of the marital debts, a copy of a 1986 ledger, bills and cancelled checks for 1986, a dental office lease agreement, the wife's estimated monthly expense sheet, the bill for her attorney's retainer, and an itemized list of expenses of the wife's attorney. After all the evidence was presented, the judge requested that the parties prepare briefs on the issues. Counsel for the husband was permitted to take possession of the hus-

band's exhibits and was instructed by the court to return them when the briefs were submitted. Based on the record, the court did not have the opportunity to examine the exhibits.

Counsel for the wife submitted a brief as requested by the court. The husband's attorney failed to submit a brief and did not return the exhibits to the court as instructed. On February 16, 1988, a judgment of dissolution was entered, the court awarding Mary Douglas: (1) custody of the children; (2) child support of $700 per month per child; (3) maintenance of $1,200 per month for 10 years; (4) attorney fees in the sum of $3,100; and (5) reimbursement for miscellaneous expenses of $9,100. No findings were made by the court as to the income of the parties nor as to the division of marital property or the responsibility for payment of marital debts.

On March 7, 1988, Jerry Douglas filed a *pro se* motion to vacate the judgment of dissolution. The crux of his argument in support of his motion was that unbeknownst to him, his attorney failed to comply with the court's order to file a brief and argument, and failed to return the documentary evidence left in his custody. The record shows that no ruling was made on the motion. Jerry Douglas thereafter obtained new counsel to represent him, whereupon an amended post-trial motion was filed June 23, 1988, on Jerry's behalf. The amended post-trial motion prayed that the court vacate the judgment of dissolution and allow him a new hearing or, in the alternative, that the court modify the judgment of dissolution in a manner commensurate with the evidence. On July 1, 1988, Jerry Douglas' attorney returned the exhibits to the court. On August 4, 1988, the court denied the post-trial motion.

With the exception of the issue regarding attorney fees, the thrust of each issue raised on appeal concerns the trial court's failure to consider the documentary evidence submitted by the parties, and the court's failure to make findings as to the parties' income, the division of marital property or the allocation of marital debts.

We first address the husband's argument that it was error for the trial court not to examine or consider the documentary evidence introduced by the parties prior to entering a judgment. The record is devoid of any showing that the trial court considered the documentary evidence. The final judgment of the trial court is absent any indication that said documentary evidence was considered. In fact, it is evident from the judge's remarks in the order denying the post-trial motion that the court did not consider the exhibits in making its decision:

"It is clear from the records that Mr. McCormick, respondent's counsel of record, never filed an answering memo and that the

respondent's documentary exhibits were not returned to Court until recently when Mr. Stewart filed the Amended Post Trial Motion.

\* \* \*

I have, in light of Mr. Stewart's written motion and argument, reviewed my holdings and the evidence, as I remember it. I must admit that I could have fine tuned my holdings, if I had been given the arguments of counsel and access to the exhibits in a timely manner. However, trial courts frequently must proceed to judgment on less than perfect record [*sic*]."

We further find from the court's comments in the record that the issues and circumstances of this case warranted a review of the exhibits. After the close of the evidence the court stated, "obviously I have a lot to digest since I have not studied the exhibits." The court also commented with regard to the issues:

"Quite frankly, I am not sure I have enough evidence to decide this case at this stage. You may convince me that I have but that's, [*sic*] I've got a lot of things that maybe will be cleared from the documents the documentation that I see and the testimony that I heard but I am not an accountant."

■■ ■ In Illinois, the law is well established that the trial judge, sitting without a jury, has the obligation of weighing the evidence and making findings of fact. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 124, 481 N.E.2d 712, 714.) A court trying a case without a jury should act on principles which it would direct a jury to follow. (*Beadle County National Bank v. Hyman* (1889), 33 Ill. App. 618, *reh'g denied* (1890), 33 Ill. App. 618, 622.) The fact finder in either form has a duty to examine evidence presented to it. In this case we find that the trial court erred in not considering all of the evidence before it.

Counsel for the wife argues that even though the court may not have examined the documentary evidence, the trial judge's decision is not against the manifest weight of the evidence. We disagree. The basis for our conclusion will become clear as we address the remaining issues on appeal.

■■■ The next issue concerns the court's failure to make a division of the marital property or to allocate the marital debt. Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(d)) states that the trial court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including" 11 enumerated factors. The statutory scheme of the Illinois Marriage and

Dissolution of Marriage Act (Act) requires that the issues concerning the final property disposition must be determined prior to the maintenance issues (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1083, 412 N.E.2d 1336, 1341), because the issues of maintenance relate directly to the results of the property disposition. (See Ill. Rev. Stat. 1987, ch. 40, par. 504.) Without such a determination, we are left without a rational basis upon which to judge the propriety of the maintenance and child support awards. (See *In re Marriage of Uphoff* (1982), 110 Ill. App. 3d 608, 612, 442 N.E.2d 965, 967.) While there is no requirement that the marital estate be split in equal portions (*In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 1131, 403 N.E.2d 730, 734), the touchstone of proper apportionment is whether it is equitable in nature. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 325, 453 N.E.2d 748, 752.) Furthermore, where the partners to a marriage accumulate debts exceeding the value of their assets, then that debt must be distributed equitably, the same as marital assets. (*In re Marriage of Simmons* (1981), 101 Ill. App. 3d 645, 647, 428 N.E.2d 1032, 1034.) While the evidence shows that the bulk of the marital assets have been taken from the parties via foreclosure proceedings, testimony did reveal that the wife possesses a 1985 automobile and that the furnishings from the marital home are in storage. Jerry Douglas contends the trial court erred in not making a determination as to the distribution of the assets and allocation of the $1 million marital debt. We agree.

Respondent, Jerry Douglas, also contends that the trial court erred in awarding maintenance and child support without first making a finding as to his income. The Act requires that the trial court consider the ability of the husband to pay when making an award of maintenance or child support. (*Uphoff*, 110 Ill. App. 3d at 612, 442 N.E.2d at 967.) Section 504(b)(6) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)(6)) lists as one of the factors to be considered in awarding maintenance "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Section 505(a)(2)(e) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(2)(e)) lists as one of the factors the court may consider in deviating from the minimum child support guidelines "the financial resources and needs of the non-custodial parent." As illustrated, the general statutory scheme assumes consideration of the parties' income in awarding maintenance and child support. Although there was testimony by each of the parties as to their income and earning capacity, the trial court made no specific findings as to their income or potential income. The statutory factors to be considered in

awarding maintenance and child support cannot be said to have been considered in the instant case where the court made no finding as to income. Absent such a finding, there is no rational basis upon which we can judge the propriety of the awards. See *Uphoff*, 110 Ill. App. 3d at 612, 442 N.E.2d at 967.

Based on the foregoing, the trial court's order awarding maintenance and child support and failing to order a distribution of assets and allocation of debt is reversed. We remand this cause to the trial court with directions to take additional evidence, if the court deems it necessary, and to enter a new order consistent with the views expressed in this opinion. On remand we further direct the trial court to examine and consider the documentary evidence submitted by the parties which, according to the record, was not examined by the court prior to entering final judgment in this matter.

Finally, Jerry Douglas contests the court's order requiring him to pay his wife's attorney fees of $3,100. We note that with regard to the attorney fees he does not contest the court's determination that the wife is financially unable to pay the fees or that he is financially able to do so. Jerry Douglas contests the award of fees only on the ground that Mary Douglas failed to prove they were reasonable and necessary in this case.

Mary Douglas contends that Jerry waived his right to contest the award of attorney fees because he made no objection to the offer of proof at trial. Jerry Douglas did not waive his right to appeal the award of attorney fees. It is well settled that a party asserting a fact or issue generally has the burden of proof as to such fact or issue. (*Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 899, 295 N.E.2d 28, 31.) The burden of proof was on the wife to prove that the fees she incurred were reasonable and necessary. The husband was not required to insist that she produce additional evidence in the event she failed to meet her burden of proof.

At the trial Mary Douglas testified that with regard to the instant cause of action, there is an outstanding bill for attorney fees of $3,100. Admitted into evidence was a billing statement for the attorney retainer fee of $600 and an itemized accounting of the total attorney fees incurred in this matter. The itemized accounting shows that her attorney spent 39.9 hours at $70 per hour, and 2 hours at $75 per hour on the case. Expenses incurred by the attorney in handling the case amounted to $201.45, for a total bill of $3,144.45. On direct examination Mary Douglas was asked, "[A]re [you] [*sic*] satisfied that you ought to be required to pay those moneys for representation in this matter?" Mary Douglas answered affirmatively. No other testi-

mony was given with regard to the reasonableness or necessity of the fees.

Before one spouse may recover attorney fees from the other, a consideration of the factors as stated in *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458-59, 387 N.E.2d 1254, 1260-61, must be made:

> "In addition to the relative financial positions of the parties, the amount of fees to be allowed in a divorce proceeding depends on a consideration of the skill and standing of the attorneys employed, the nature of the controversy, and the novelty and difficulty of the questions at issue; the amount and importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client."

The work for which compensation is sought must be shown to be reasonably required and necessary for the proper performance of legal services under the circumstances. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582, 373 N.E.2d 576, 579.) It is unclear from the record whether the fees awarded were reasonable and necessary. (See *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 1010, 293 N.E.2d 680, 682.) We reverse the order awarding attorney fees and remand this cause to the circuit court with directions to hear evidence and determine the necessity and reasonableness of the attorney fees.

Reversed and remanded, with directions.

LEWIS, P.J., and RARICK, J., concur.